IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sherry McDermott,                         :
                        Petitioner        :
                                          :
            v.                            :     No. 753 C.D. 2025
                                          :     Submitted:  April 13, 2026
Unemployment Compensation                 :
Board of Review,                          :
                        Respondent        :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
          HONORABLE MATTHEW S. WOLF, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER          FILED:  July 29, 2026


        Sherry McDermott (Claimant), pro se, petitions for review of an Order of the Unemployment Compensation Board of Review, denying her unemployment compensation (UC) benefits pursuant to Section 402(b) of the Unemployment Compensation Law (UC Law).[1]  The Board determined Claimant voluntarily quit her employment without a necessitous and compelling reason and, therefore, found her ineligible for UC benefits.  Because Claimant did not demonstrate that termination was imminent or there was a change in her job duties, we affirm the Board's Order.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).

## I. BACKGROUND

Claimant worked at Comcast Cablevision Corp. (Employer) for approximately 16 years. (Certified Record (C.R.) at 3.) In her most recent role, Claimant worked as a full-time customer service representative. (*Id.*) Her duties included speaking with customers on the phone and selling them services such as internet, television, and cell phones. (*Id.* at 17-18.) Claimant separated from her employment on December 23, 2023. (*Id.* at 3.)

Thereafter, Claimant filed a claim for UC benefits. (*Id.* at 6.) On March 11, 2024, the service center issued a determination, stating that Claimant did not qualify for UC benefits because "[t]he choice to retire was [hers] alone." (*Id.* at 26.) Claimant appealed and a hearing before a Referee was scheduled.[2]

At the telephone hearing, Claimant testified as follows. Employer was beginning to outsource "more and more people" to do Claimant's job. (*Id.* at 313.) Claimant received a voluntary retirement and severance package by email. (*Id.*) Claimant's supervisors said "take it because it's going to go away anyway," in reference to her "job title." (*Id.*) Claimant's supervisors also informed her if she did not sell enough mobile phones, she would be placed on a warning, which had never happened to Claimant before. (*Id.*) Claimant would eventually be terminated if she

---

[2] On the day of the initial hearing, neither Claimant nor Employer appeared so the Referee entered all documents into the record and ended the hearing without the parties. (C.R. at 86-87.) The Referee released a decision on June 4, 2024, denying Claimant benefits. (*Id.* at 89-90.) Claimant appealed to the Board 21 days after the deadline. (*Id.* at 322.) The Board initially remanded for a hearing as to whether Claimant's appeal should be accepted as timely filed and Claimant testified she never received the Referee's order. (*Id.* at 122, 170.) The Board found Claimant's appeal was timely and remanded for another hearing to accept testimony about Claimant's nonappearance at the first hearing and the merits of her appeal. (*Id.* at 174; Board's Decision, Finding of Fact (FOF) ¶ 8.) The Board ultimately found the initial hearing notice was sent to the wrong address. (FOF ¶ 7.) The timeliness of the appeal and Claimant's nonappearance are not issues before this Court.

did not sell enough cell phones. (*Id.* at 314.) To be terminated, she first would receive a verbal warning, a written warning, and then a final termination. (*Id.*) The entire disciplinary action would take approximately three months. (*Id.*) Claimant believed that because of her history of not meeting the sales quota, she eventually would be terminated. (*Id.* at 315.)

From her testimony, the Board made the following pertinent Findings of Fact:

1.      [] [C]laimant was last employed as a full-time customer service representative for [Employer] with a final date worked of December 23, 2023. []

2.      One of [Claimant's] job duties included selling mobile phones to customers.

3.      [] [C]laimant was told that she would receive a warning if she did not sell enough phones in a month.

4.      [] [C]laimant believed she would eventually be terminated for not selling enough phones, although she was not warned or otherwise disciplined for not selling the phones.

5.      [] [E]mployer offered [] [C]laimant a voluntary retirement package, which included a severance.

6.      [] [C]laimant resigned in order to receive the severance in the voluntary retirement agreement.

. . . .

(Board's Findings of Fact (FOF) ¶¶ 1-6.)

The Board held Claimant did not meet her burden under Section 402(b) of the UC Law, reasoning:

[C]laimant felt that [] [E]mployer wanted to push her out and outsource her job, and so she was given unrealistic expectations about how many phones to sell in a month. However, the credible evidence and testimony, including her own admission at the hearing, shows that

3

while [] [C]laimant *could have* been warned or disciplined based on the cell phone quotas, this never occurred. Therefore, unlike a situation where a claimant resigns to avoid imminent discharge, [] [C]laimant here was never even placed on the first step of the disciplinary process. Accordingly, her belief that she was going to be disciplined and ultimately fired does not rise to the level of resigning to avoid imminent discharge, so that cannot serve as a necessitous and compelling reason to quit.

(Board's Decision at 2) (italics in original). It is from this decision that Claimant now seeks review.

## II. DISCUSSION[3]

Claimant argues she did not quit but rather was forced to retire because if she did not, she would be terminated. Additionally, she argues that she resigned because she knew she would not meet her quota and did not want warnings to "blemish" her record of hard work. (Claimant's Brief (Br.) at 5.) Lastly, she argues she is eligible for UC benefits because Employer changed her job description. In response, the Board argues that Claimant was not forced to retire and quit because she was concerned she might be fired. The Board argues that because her employment was not imminently in danger, Claimant did not have a necessitous and compelling reason to quit, and therefore, should be denied benefits. We are constrained to agree.

Section 402(b) of the UC Law provides in part: "[a]n employe shall be ineligible for compensation for any week . . . [i]n which [her] unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature[.]" 43 P.S. § 802(b). Under the UC Law, where a claimant resigns to avoid the possibility of termination, their resignation is considered a voluntary termination.

---

[3] Our review is limited to determining whether necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

*Smith v. Unemployment Comp. Bd. of Rev.*, 261 A.3d 615, 620 (Pa. Cmwlth. 2021). After a voluntary resignation, a claimant must prove they had a necessitous and compelling reason for terminating employment in order to be eligible for UC benefits. *Fitzgerald v. Unemployment Comp. Bd. of Rev.*, 714 A.2d 1126, 1129 (Pa. Cmwlth. 1998). A claimant must establish: "(1) circumstances existed which produced real and substantial pressure to terminate employment; (2) like circumstances would compel a reasonable person to act in the same manner; (3) [the claimant] acted with ordinary common sense; and (4) [the claimant] made a reasonable effort to preserve their employment." *Id*.

Claimant first argues that she did not quit. However, this Court has previously held that a resignation motivated by the possibility of termination constitutes a voluntary quit where the termination is not imminent and there are other options. For example, in *Fishel v. Unemployment Compensation Board of Review*, 674 A.2d 770, 773 (Pa. Cmwlth. 1996), we held a claimant voluntarily quit her position after she was placed on leave without pay and a recommendation to terminate her was made to the school board. We reasoned that because it was not certain the school board would terminate her, the claimant prematurely resigned in order to avoid the possibility of termination, and therefore, voluntarily quit. *Id*.; *see also Goffi v. Unemployment Comp. Bd. of Rev.*, 427 A.2d 1273, 1275 (Pa. Cmwlth. 1981) (holding claimant voluntarily quit after resigning because he thought he would be terminated and did not wait for a "definitive determination of his status by those with authority to hire and fire"). Similarly, here, Claimant did not have reason to believe that she was going to be terminated if she failed to meet her quota. Regardless, in the event she did not meet her quota, Claimant would be given three warnings before being terminated. Termination for Claimant was even further away than the

claimants in *Fishel* and *Goffi*, and therefore, consistent with our precedent, we must conclude Claimant voluntarily quit her employment because of the possibility of termination.

Claimant next argues that she needed to "either retire or get to the point of disciplinary action," blemishing her record of hard work. (Claimant's Br. at 5.) We have previously held that "resignation because of a desire to keep an 'unsatisfactory' evaluation from becoming part of the individual personnel file" is not a necessitous and compelling reason for termination. *Gackenbach v. Unemployment Comp. Bd. of Rev.*, 414 A.2d 770, 771 (Pa. Cmwlth. 1980). Accordingly, Claimant's fear of receiving a disciplinary action for failure to sell enough cell phones is insufficient to be a necessitous and compelling reason to voluntarily quit.

Lastly, Claimant argues she should be eligible for UC benefits because of a change in her job description, amounting to a necessitous and compelling reason to quit. While it is true in some cases that a change in job description is sufficient to be a necessitous and compelling reason to quit employment, the change must be substantial. *See Morgan v. Unemployment Comp. Bd. of Rev.*, 108 A.3d 181, 187-88 (Pa. Cmwlth. 2015) (en banc) ("It is well-settled that an employer's imposition of a substantial unilateral change in the terms of employment constitutes a necessitous and compelling cause for an employee to terminate h[is] employment.") (brackets in original) (citation omitted). Here, however, the Board found that selling cell phones was one of Claimant's job duties. The Board is the factfinder, and we are bound by its Findings of Fact as long as the findings are supported by substantial evidence. *See Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Rev.*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008). This Court cannot disregard the Board's Findings of Fact, or engage in our own factfinding. The Board's finding regarding Claimant's

job duties is supported by substantial evidence. We, therefore, cannot conclude that there was a change in her job description sufficient to be a necessitous and compelling reason to quit employment.

## III. CONCLUSION

In sum, we conclude that the Board correctly determined that Claimant voluntarily resigned from Employer without a necessitous and compelling reason. Accordingly, we affirm the Board's Order.

_____
RENÉE COHN JUBELIRER, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sherry McDermott,                    :
                Petitioner    :
                           :
                v.           :    No. 753 C.D. 2025
                           :
Unemployment Compensation            :
Board of Review,                     :
              Respondent   :

# **O R D E R**

    **NOW**, July 29, 2026, the Order of the Unemployment Compensation Board of Review, entered in the above-captioned matter, is **AFFIRMED**.

_____
RENÉE COHN JUBELIRER, President Judge